**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-1508-MDB

COLTON JOHN HARRIS,

      Plaintiff,

v.

TAKE-TWO INTERACTIVE SOFTWARE, INC.
a Delaware corporation,

      Defendant.

---

**DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT
PURSUANT TO F.R.C.P. 12(b)(6)**

---

Defendant Take-Two Interactive Software, Inc. ("Take-Two") respectfully moves to dismiss Plaintiff Colton John Harris's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.**     <u>**Introduction**</u>

Defendant Take-Two is the parent company of Rockstar Games, Inc. ("Rockstar"), the developer of *Grand Theft Auto V*, which is one of the most popular action-adventure video games in the world. *Grand Theft Auto V* and its online multiplayer mode *Grand Theft Auto Online* (together, "GTAV") are available for play on the Sony PlayStation and Microsoft Xbox game consoles, as well as on PCs.

Plaintiff is a user of Take-Two's services related to GTAV, specifically, Take-Two's creator platform named FiveM, which Take-Two acquired in August 2023 as part of its acquisition

1

of CFX.re. FiveM is an online platform that allows users to host their own version of GTAV and to share user-generated content ("UGC") for GTAV with other players. *See* ECF No. 73; *see also* www.fiveM.net. Plaintiff alleges that he created a FiveM account on CFX.re on April 17, 2019. ECF No. 73 at ¶ 6, 18, Ex. A.

Plaintiff's user account, which grants him access to FiveM's services and UGC stored on FiveM, is not his personal property. Plaintiff's ability to create and maintain an account to use FiveM was expressly conditioned upon his agreement to and ongoing compliance with certain terms of use established by Take-Two. To play GTAV or to use the FiveM platform, Plaintiff—like all users—first had to agree to Rockstar's Terms of Service and End User License Agreement, and the FiveM Creator Platform License Agreement (together the "Terms of Use"); the Terms of Use form a binding legal agreement between Plaintiff and Take-Two. If a user violates the Terms of Use, Take-Two has the right to immediately terminate that user's access to its services.

Plaintiff's creation of the account and use of Take-Two's services did not give him any ownership rights to his account. His ongoing access to Take-Two's services through his account requires continuing compliance with the Terms of Use, including (for example) following certain standards of behavior[1] within the Rockstar community and not violating third-party intellectual property rights[2] when creating and sharing UGC with other players. When Plaintiff violated these policies, he breached his agreement; thereafter, Take-Two exercised its termination rights under the Terms of Use to deactivate his account.

Plaintiff has now filed a frivolous lawsuit against Take-Two and is attempting to extract a

---

[1] *See* Declaration of Andrew Ungberg ("Ungberg Decl."), Ex. 1, "Code of Conduct."
[2] *See* Ungberg Decl., Ex. 2., Sec. 5.4.

seven-figure payment from Take-Two—even though deactivation of his account was the consequence of his own actions and within Take-Two's rights under the parties' agreements.

Plaintiff's claims against Take-Two suffer from fatal flaws. First, Plaintiff fails to properly plead *any* valid claim against Take-Two. Second, the facts establish that Plaintiff's claims could not be remedied by again amending the allegations of the Third Amended Complaint. Accordingly, Plaintiff's Third Amended Complaint should be dismissed in its entirety, with prejudice.

## II.     Factual Background

Plaintiff created an account on FiveM and used its features to create UGC—digital modifications to in-game art assets for GTAV—and store and sell this UGC to other users through an integration between FiveM and an e-commerce platform called Tebex. *See* ECF No. 73 at ¶ 7.

Before he could even create a FiveM account, the existence of which is central to Plaintiff's claims, Plaintiff agreed to the Terms of Use. *See id.* at ¶ 6, 18, Ex. A. Plaintiff agreed to the Rockstar Terms of Service on May 9, 2019 and the Rockstar End User License Agreement on June 6, 2020. *See* Ungberg Decl. at ¶¶ 12-15, Exs. 1-2. After Take-Two acquired CFX.re in August 2023, Plaintiff agreed to the FiveM Creator Platform License Agreement on September 24, 2023 in order to continue using his preexisting CFX.re account.[3] *See* Ungberg Decl. at ¶¶ 12-16, Ex. 3.

Accounts on FiveM are not a user's personal property and users do not own them. FiveM accounts enable access to Take-Two's services and Take-Two has the right under the Terms of Use to terminate any user account that violates the Terms of Use and a user's access to any services

---

[3] Copies of the Terms of Use in effect on the dates of Plaintiff's acceptance of them are attached to the Ungberg Decl. as Exhibits 1-3. The Terms of Use permit Take-Two to modify them at any time in its sole discretion by posting revisions online. *See* Ex. 1 at "Miscellaneous". Take-Two is not submitting all versions of the Terms of Use posted after the dates of Plaintiff's acceptance of them, but will provide them at the Court's request.

or UGC. *See* Ungberg Decl., Ex. 1 at "Description of Online Services" and "Termination"; Ex. 3 at Sec. 2.3. Users of Take-Two's services explicitly acknowledge that Take-Two may moderate content on its platform, including by accessing a user's account and to modify, take-down, suppress, block, hide, remove, or delete UGC. *See* Ungberg Decl., Ex. 3, Sec. 5.4. Take-Two is also entitled under the Terms of Use to immediately terminate a user's access to the FiveM platform and the user's UGC if a user violates Take-Two community policies or engages in intellectual property infringement. *See* Ungberg Decl., Ex. 1 at "Description of Online Services," "Code of Conduct," and "Termination"; Ex. 3 at Sec. 2.3.

Plaintiff includes numerous allegations related to "Keymaster" and "Tebex" in his Third Amended Complaint, so a brief overview of the interaction of the various systems may be helpful to the Court. Plaintiff alleges that he uses his own personal PC and server to develop his UGC. ECF No. 73 at ¶ 5. In order to engage with other players on FiveM and share UGC, users must have a FiveM account. Ungberg Decl. at ¶ 5. A user's FiveM account also provides access to systems that are part of the FiveM platform, such as Keymaster, which runs on FiveM owned and operated equipment and is thus subject to the Terms of Use. *Id.* at ¶ 6. Keymaster is FiveM's authentication system which generates server registration keys allowing users to integrate their personal servers with the FiveM network. *Id.* at ¶ 7. Once connected in this way, users can use their FiveM account to manage aspects of their server and grant access to other players through FiveM. *Id.* The user may also choose to use Keymaster as a secure asset storage library to manage custom UGC that they create or purchase. *Id.* at ¶ 8. If a user chooses to build an e-commerce store for their UGC, they may partner with Tebex, which is a third-party payment processor and e-commerce vendor that integrates with FiveM, but does not itself store UGC. *Id.* at ¶ 9. Keymaster

4

integrates with Tebex to facilitate a purchaser's access to UGC stored in Keymaster once a transaction has been processed by Tebex. *Id.* at ¶ 10.

Take-Two periodically moderates UGC on FiveM that may violate the law and/or infringe third-party intellectual property rights. Ungberg Decl. ¶ 17. Through this process, and as permitted by the Terms of Use, Take-Two content moderators, using screen names to protect their identities, identified potentially infringing UGC associated with Plaintiff's FiveM account. ECF No. 73 at ¶¶ 8, 11, 18, 22; Ungberg Decl. ¶ 17. As a result, Take-Two exercised its right to suspend Plaintiff's access to his account and his UGC. ECF No. 473 at ¶¶ 8, 11, 22; *see also* Ungberg Decl. ¶¶ 17-18, Ex. 1 at "Code of Conduct" and "Termination"; Ex. 3 at 2.3, 4.1, 5.4.

On March 7, 2024, Plaintiff commenced an action in the District Court for El Paso County, Colorado against Defendant, asserting claims for violation of the Computer Fraud and Abuse Act (CFAA), breach of privacy, and violation of consumer protection laws, and asserting $1.5 million dollars in damages. ECF No. 3. Take-Two removed the state court action to the Court on May 29, 2024. ECF No. 1. After Take-Two filed a motion to dismiss Plaintiff's complaint, Plaintiff filed an Amended Complaint on June 26, 2024, adding several new claims. ECF No. 26. Take-Two moved to dismiss Plaintiff's Amended Complaint on July 10, 2024. ECF No. 29.  Plaintiff then requested leave to file a Second Amended Complaint to withdraw certain claims, re-label exhibits, and update "very small details," which the Court granted and Take-Two's motion to dismiss was mooted.  ECF Nos. 41 at ¶ 3, 53.  Plaintiff filed his Second Amended Complaint on July 31, 2024, and Take-Two moved to dismiss it on August 13, 2024. ECF Nos. 46, 64. In response, Plaintiff requested leave to file a Third Amended Complaint on August 26, 2024 to "refine the allegations and address new information[.]" ECF No. 66. The Court subsequently held a motion hearing and

granted Plaintiff leave to file the Third Amended Complaint based on Plaintiff's representation that he did not intend to file any additional amendments. ECF No. 72. Take-Two now moves to dismiss Plaintiff's Third Amended Complaint (ECF No. 73) with prejudice.

### III. <u>Defendant Fails to State Any Claim Upon Which Relief May be Granted</u>

Take-Two moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Because the allegations in Plaintiff's Third Amended Complaint establish that Plaintiff has no valid claims against Take-Two and another amendment could not remedy the pleading deficiencies, the Third Amended Complaint should be dismissed with prejudice.

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting

6

*Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id*. (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

When a party presents matters outside of the pleadings for consideration, as a general rule "the court must either exclude the material or treat the motion as one for summary judgment." *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004) (quoting *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)). However, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the claim, a defendant may submit an authentic copy to the court to be considered on a motion to dismiss. *GFF Corp. v. Assoc'd Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

### A. Plaintiff Fails to State a Claim for Violation of the Computer Fraud and Abuse Act (CFAA) (Count I)

To allege a claim for breach of the CFAA, Plaintiff must establish (1) intentional accessing of a computer; (2) access "without authorization" or that "exceeds authorized access"; (3) data was taken from a protected computer; and (4) data was taken for commercial advantage or private financial gain where the value of the information obtained exceeds $5,000. 18 U.S.C. § 1030(a)(2).

Plaintiff fails to adequately plead a claim for violation of the CFAA. Plaintiff alleges only that he has an account and data on the FiveM platform that Take-Two accessed without "Plaintiff's legal consent" and that Take-Two's content "mirrors the design and functionality of Plaintiff's assets[.]" ECF No. 73 at ¶¶ 6, 8, 12. These allegations do not establish a violation of the CFAA.

And, even if Plaintiff amended his complaint again to include allegations purportedly supporting all of the elements of a claim for violation of the CFAA, Plaintiff still could not prevail. First, a FiveM account is not a computer. Plaintiff's FiveM account merely provides access to Take-Two's services and the information, data, and UGC associated with Plaintiff's account, including Keymaster, which runs on FiveM owned and operated equipment. *See* Ungberg Decl. at ¶¶ 6, 8; Ex. 3 at Sec. 1. Second, in order to create his account, Plaintiff expressly acknowledged and agreed to the Terms of Use, which state that Take-Two can access his account to moderate content and to modify, take-down, suppress, block, hide, remove, or delete his UGC. *See* Ungberg Decl., Ex. 3 at Sec. 5.4.

Plaintiff refers to an "Incident Report" from CFX.re from November 2022—prior to Take-Two's acquisition of Five M—which Plaintiff claims made him uncomfortable about the identity of Take-Two's moderator communicating with him about inspecting Plaintiff's content. ECF No. 73 at ¶¶ 8-12, 25-28, 22; Exs. D-G. Plaintiff's reluctance to disclose file names to Take-Two's content moderation team and the reasons for that reluctance are immaterial: although Take-Two content moderators requested Plaintiff's cooperation with Take-Two's inspection as a matter of courtesy, Take-Two was still entitled under the Terms of Use to access Plaintiff's account even without it. *See* Ungberg Decl., Ex. 3 at Sec. 5.4.

These are threshold facts that bar Plaintiff's claim for violation of the CFAA and Count I should be dismissed with prejudice.

### B. Plaintiff Fails to State a Claim for Breach of Privacy (Count II)

Colorado courts have recognized the existence of three torts of interference with a person's right of privacy: (1) unreasonable intrusion on the seclusion of another; (2) unreasonable publicity

given to another's private life; and (3) appropriation of another's name or likeness. *See Slaughter v. John Elway Dodge Southwest/AutoNation*, 107 P.3d 1165, 1170-71 (Colo. Ct. App. 2005). Plaintiff alleges that "[u]nauthorized access to Plaintiff's account and data constitutes a unreasonable intrusion upon Plaintiff's seclusion," constituting a breach of privacy under Colorado common law. ECF No. 73 at ¶ 26.

As stated above, Plaintiff's FiveM account is not his personal property and Plaintiff is not entitled to an expectation of seclusion or privacy. It is the opposite. Plaintiff's FiveM account provides access to Take-Two's services, including Keymaster, which asset storage features Plaintiff elected to use. Ungberg Decl. ¶¶ 5-8, ECF No. 73 at ¶¶ 34-35. In agreeing to the Terms of Use, Plaintiff acknowledged that the limited license granted to him was only to access Take-Two's services through his account. *See* Ungberg Decl., Ex. 1. And the Terms of Use expressly permit Take-Two's access to Plaintiff's account to moderate content and to modify, take-down, suppress, block, hide, remove, or delete his UGC for his violations of the Terms of Use. *See* Ungberg Decl., Ex. 1 at "Code of Conduct"; Ex. 3 at Sec. 5.4. Take-Two's content moderators identified potentially infringing UGC associated with Plaintiff's FiveM account and violations of Take-Two's community policies and, as a result, Take-Two exercised its right under the Terms of Use to suspend Plaintiff's access to his FiveM account. Ungberg Decl. ¶ 18.[4] Plaintiff cannot plausibly state a claim for breach of privacy and Count II should be dismissed with prejudice.

---

[4] Plaintiff's allegations indicate that he suspects that access to his account was suspended on March 8, 2024 in retaliation for Plaintiff's lawsuit against Take-Two. ECF No. 73 at ¶ 14. Plaintiff filed his lawsuit in Colorado state court on March 7, 2024, but Take-Two was not served with the Complaint until the end of April 2024. *See* ECF No. 1, Exs. 6 and 9.

  **C. Plaintiff Fails to State Claims for Violation of the Colorado Consumer Protection Act (Count III)**

In Count III of the Second Amended Complaint, Plaintiff alleges that Take-Two "used the Keymaster encryption software, which was originally designed to protect assets from leaks, in a manner that deceptively allowed them to access and claim ownership of Plaintiff's data" in violation of the Colorado Consumer Protection Act (CCPA), C.R.S. § 6-1-101 *et seq*. ECF No. 73 at ¶ 42. Plaintiff claims that Take-Two "misrepresented the purpose and function of the Keymaster software to the public, leading consumers, including Plaintiff, to believe that their digital assets would be protected from unauthorized access" and that "all users of Cfx.re…rely on the integrity of Keymaster to safeguard their intellectual property." *Id*. at ¶¶ 43-44, Ex. C.

A valid claim under the CCPA consists of the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of [the] defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). "All elements of a CCPA claim must be met; otherwise, the claim fails as a matter of law." *Id.*

Plaintiff misstates the functionality of Keymaster. Keymaster is FiveM's authentication system which generates server registration keys allowing users to integrate their personal servers with the FiveM network. Ungberg Decl. at ¶ 7. Once connected in this way, users can use their FiveM account to manage aspects of their server and grant access to it to other players through

FiveM. *Id.* A user may also choose to use Keymaster as a secure asset storage library to manage custom user-generated content that they create or purchase. *Id*. at ¶ 8. Suspending access to a user's FiveM account does not affect the existence or security of content that a user elects to store in Keymaster; it only affects a user's access to it.

Plaintiff's Third Amended Complaint contains conclusory allegations about Take-Two's "unauthorized access" of Plaintiff's account and data. As stated previously, Take-Two's Terms of Use permit Take-Two to access Plaintiff's FiveM account, terminate Plaintiff's access to his account and to Take-Two's services including Keymaster, and cease allowing Plaintiff's participation in the Take-Two community. *See* Ungberg Decl. ¶¶ 17-18, Ex. 1 at "Code of Conduct" and "Termination"; Ex. 3 at 2.3, 4.1, 5.4. Plaintiff's allegations are entirely personal to Plaintiff and fail to establish that Take-Two engaged in unfair or deceptive trade practices, much less that Take-Two's access to Plaintiff's account injured a legally protected interest belonging to him or that it significantly impacts the public. Take-Two's Terms of Use are publicly available. Users of Take-Two's services expressly agree to and acknowledge the Terms of Use. There is no deception. Accordingly, Count III for Violation of the Colorado Consumer Protection Act should be dismissed with prejudice.

### D. Plaintiff Fails to State a Claim for Violation of Antitrust Laws Under the Sherman Act or the Clayton Act (Count VI[5])

In his Third Amended Complaint, Plaintiff alleges a claim for violation of the Sherman Act and the Clayton Act: Count VI for Violation of Antitrust Laws (Sherman Act and Clayton Act).

---

[5] The Third Amended Complaint labels Plaintiff's claim for "Violation of Antitrust Laws (Sherman Act and Clayton Act)" as Count VI, but it should be labeled as Count IV if numbered sequentially. For ease of reference, Take-Two uses Plaintiff's designations, *i.e.* Count VI, for this claim.

The Sherman Act outlaws "every contract, combination, or conspiracy in restraint of trade, and any "monopolization, attempted monopolization, or conspiracy or combination to monopolize." 15 U.S.C. § 1 *et seq*. The Sherman Act prohibits only unreasonable restraints of trade. *Id.* The Clayton Act prohibits mergers and acquisitions where the effect "may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 12 *et seq*. The Clayton Act authorizes a private right of action for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a).

For a plaintiff to have standing, the Clayton Act requires an "antitrust injury", *i.e.,* the type of injury which the antitrust laws were intended to prevent and which "flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). It also requires the plaintiff to be an "efficient enforcer of the antitrust laws" in order to have standing to seek damages. *See Abraham v. Intermountain Health Care Inc.,* 461 F.3d 1249, 1268 (10th Cir. 2006). For an antitrust claim, the resulting injury must reflect anticompetitive effects of the defendants' conduct. *Full Draw Productions v. Easton Sports, Inc.,* 182 F.3d 745, 750, 753–54 (10th Cir. 1999). In considering whether a plaintiff is an efficient enforcer of the antitrust laws, relevant factors are "the directness or remoteness" of the injury, whether others were more directly injured than the plaintiff, and whether the plaintiff has economic interest in preserving competition in the marketplace. *Abraham,* 461 F.3d at 1268.

Once a plaintiff alleges facts demonstrating standing, the plaintiff must also allege the following in order to state a claim for attempted monopolization in violation of the Sherman Act: (1) a relevant market, including a geographic market and a relevant product market, exists; (2) there is a dangerous probability that the defendant will succeed in monopolizing the relevant

12

market; (3) the defendant has a specific intent to monopolize; and (4) the defendant engaged in conduct to further such attempt. *Full Draw Productions,* 182 F.3d at 756. As to each element, conclusory allegations are insufficient; a plaintiff must allege sufficient facts to give the defendant notice of what is claimed. *Id.* at 755.

Plaintiff pleads no facts establishing his standing under the Clayton Act: the only identifiable injury of which Plaintiff complains—suspension of access to his FiveM account as a consequence for his violation of Take-Two's Terms of Use—is specific to Plaintiff and not an injury to competition in general. This failing alone mandates dismissal of Count VI. *See Crocs, Inc. v. Australia Unlimited, Inc*., 1008 WL 4426170 (D. Colo. 2008) (dismissing claim for violation of the Sherman Act because plaintiff pled only a specific injury).

Plaintiff fails to allege any facts supporting any element for a claim of attempted monopolization under the Sherman Act of a geographic or product market, much less that Take-Two has a specific intent to monopolize any market or engaged in impermissible conduct. Count VI contains a litany of generalized complaints, but the crux of Plaintiff's allegations appear to be Plaintiff's dissatisfaction with the existence of Take-Two's Terms of Use for his account, which Plaintiff agreed to years ago.  ECF No. 73 at ¶¶ 51-58 These are not actionable grievances. GTAV is a single video game among hundreds or thousands. Take-Two permits users to modify GTAV intellectual property by creating UGC, such as custom paint colors for a vehicle used in the game. Creation of UGC is an optional activity and not required to play the game. Plaintiff also appears to believe that the Terms of Use granted "retroactiv[e]…ownership over assets that were already purchased and in use on other private servers." ECF No. 73 at ¶¶ 54, 55, and 58. However, Take-Two's Terms of Use are clear that a user maintains any ownership interest they may have in their

13

UGC, but grant Take-Two a license to such UGC in exchange for use of Take-Two's services; the user's existing ownership rights, if any, are not transferred to Take-Two. *See* Ungberg Decl., Ex. 1 at "License to the Company"; Ex. 2 at "License Conditions"; Ex. 3 at 5.3.

Accordingly, Count VI for Violation of Antitrust Laws should be dismissed with prejudice.

### E. Plaintiff Fails to State a Claim for Unjust Enrichment (Count VIII[6])

To recover for unjust enrichment, Plaintiff establish (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit. *See Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779, 780 (Colo. 1967). Unjust enrichment is an equitable remedy; equitable remedies are normally only available when the remedy at law is inadequate. *Tyler v. City of Manhattan*, 119 F.3d 1400, 1416 (10th Cir. 1997). When an express contract applies between parties to litigation, Colorado law provides that an unjust enrichment claim that covers the same subject matter is prohibited as a matter of law because the express contract precludes any implied-in-law contract. *Interbank Investments, LLC v. Eagle River Water and Sanitation Distr.*, 77 P.3d 814, 816 (Colo. App. 2003).

Count VIII of the Third Amended Complaint purports to assert a claim for unjust enrichment based on Take-Two's alleged inclusion of the "weapon designs and weapon functions" of a digital candy cane weapon and snowball launcher in GTAV, which Plaintiff claims are "identical and substantially similar to Plaintiff's digital assets." ECF No. 73 at ¶¶ 60-62. Even assuming that Take-Two used Plaintiff's UGC to create the digital candy cane weapon and

---

[6] The Third Amended Complaint labels Plaintiff's claim for "Unjust Enrichment" as Count VIII, but should be labeled as Count V if numbered sequentially. For ease of reference, Take-Two uses Plaintiff's designation, *i.e*. Count VIII, for this claim.

snowball launcher (which it did not), Plaintiff's claim for unjust enrichment is prohibited as a matter of law because there are express contracts between Plaintiff and Take-Two—the Terms of Use—that govern use of UGC. In exchange for Plaintiff's use of Take-Two's services, the Terms of Use contain a license for Take-Two to "use, reproduce, copy, adapt, edit, modify, distribute, perform, display, publish, broadcast, transmit, translate, create derivative works based on, or otherwise exploit" any UGC created or shared through FiveM. *See* Ungberg Decl., Ex. 1 at "License to the Company"; Ex. 2 at "License Conditions – User Created Content"; Ex. 3 at 5.3. Thus, Plaintiff's claim for unjust enrichment should be dismissed with prejudice.

### IV. Conclusion

As evidenced by the allegations of the Third Amended Complaint and the Terms of Use that Plaintiff agreed to prior to creating his account, Plaintiff's claims are legally and factually deficient. There are no amendments that would remedy the deficiencies. Therefore, the Third Amended Complaint against Take-Two should be dismissed in its entirety with prejudice.

DATED: September 23, 2024

> Respectfully submitted,
>
> By: */s/ Carolyn Juarez*
> Carolyn Juarez
> Neugeboren O'Dowd PC
> 726 Front St., Ste. 220
> Louisville, CO 80027
> T: (720) 536-4900
> F: (720) 536-4910
> Email: carolyn@nodiplaw.com
> ATTORNEYS FOR DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 23, 2024, a true and correct copy of the foregoing **MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO 12(b)(6)** was filed with the Clerk of Court using the CM/ECF system.

*/s/ Carolyn Juarez*
Carolyn Juarez