IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-1508

COLTON JOHN HARRIS,

    Plaintiff,

v.

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

a Delaware corporation,

    Defendant.

**PLAINTIFF'S OBJECTION TO COURTROOM MINUTES (DOC. 129)**

Plaintiff, Colton John Harris, respectfully submits this objection to the Courtroom Minutes (Doc. 129) entered following the Status Conference held on December 17, 2024. As a pro se litigant with disabilities, Plaintiff faced significant challenges in effectively presenting arguments during oral hearings and seeks to correct inaccuracies and mischaracterizations in the record. Plaintiff's intent is to ensure that the record accurately reflects Plaintiff's concerns and objections, while addressing procedural inequities that disproportionately benefit the Defendant. Specifically, Plaintiff seeks to:

- Correct inaccuracies and mischaracterizations in the record that fail to accurately represent Plaintiff's concerns and objections.
- Address the improper grouping of Motion 96 with unrelated motions, which diluted its significance and undermined Plaintiff's ability to secure default judgment.
- Challenge procedural decisions that disproportionately benefited the Defendant, including the sua sponte extension granted mere hours before midnight.
- Highlight the Court's failure to adequately address critical issues raised by Plaintiff, including concerns over the legality of the Cfx.re acquisition, evidence spoliation, and Defendant's procedural misconduct.
- Object to prejudicial language and implications within the Court's minutes that suggest bias against Plaintiff as a pro se litigant.

These issues collectively undermine the fairness and integrity of the proceedings. Plaintiff respectfully requests that the record be corrected to reflect the legitimate concerns raised, while also ensuring equitable treatment for a pro se litigant with disabilities who is entitled to fairness and access to justice.

---

**Mischaracterization of Plaintiff's Concerns**

The Court mischaracterized Plaintiff's concerns regarding the Defendant's use of evidence. Plaintiff's concerns are not merely about the "**use of purported evidence in the motion to dismiss**" but specifically about the following:

1. **Selective Presentation of Evidence**:

- The Defendant submitted selective evidence that favored its arguments while omitting key evidence unfavorable to its claims in their motion to dismiss.

2. **Improper Introduction of Evidence in the Reply Brief**:

    - The Defendant introduced new, critical evidence in its Reply Brief **(Doc. 90)** that was both procedurally improper and misleading after the plaintiff responded to their selective evidence in their motion to dismiss.
    - The Reply Brief is not the appropriate place to introduce evidence, as it deprives the opposing party of the opportunity to fully address or challenge it.

3. **Misleading Evidence**:

    - The new evidence introduced in the Reply Brief included blurred screenshots designed to falsely suggest a connection to Plaintiff's account, which is necessary to prove a clickwrap agreement.
    - Contradictory statements from Defendant's attorney (who also served as a witness) further undermine the credibility of this evidence.

4. **Preservation Concerns**:

    - The day before the Defendant was to respond to Plaintiff's allegations of selective and improper evidence use, it announced its spoliation of the same evidence.

The Court's summary of these concerns in the minutes is inaccurate and minimizes the severity of Defendant's procedural misconduct.

---

**Improper Grouping of Motion 96 with Other Motions**

Motion 96, which raises serious allegations of procedural misconduct and improper use of evidence, was improperly grouped with unrelated motions. This decision diluted the urgency and significance of **Motion 96** and shielded the Defendant from default judgment by allowing procedural delays to undermine Plaintiff's claims. At the time the sua sponte extension was granted, only four motions were pending—an entirely manageable number for a billion-dollar corporation with substantial legal resources.

Defendant failed to request an extension of time or provide any justification for its inability to respond. The sua sponte extension by the Court effectively rewarded Defendant's procedural negligence and deprived Plaintiff of the opportunity to secure default judgment. The extension was granted mere hours before midnight, raising serious concerns about its timing and fairness. The proximity of the extension to the default judgment creates undue effort to shield Defendant from procedural consequences.

The sua sponte extension, rather than achieving its intended purpose of streamlining proceedings, had the opposite effect by creating uncertainty and unnecessarily prolonging litigation. The rationale for grouping unrelated motions to "streamline" proceedings is further undermined by subsequent actions, such as the post hoc request for hearing transcripts (Doc. 131). This request delayed the process further and contradicted the stated intent of expediting the case.

Moreover, the Court's Minutes from the Status Conference (Doc. 129) fail to provide any substantive justification for the sua sponte extension. By grouping Motion 96 with unrelated motions, the Court diluted the significance of Plaintiff's serious allegations of procedural misconduct and improper use of evidence. The decision to grant an extension without cause

further enabled Defendant to avoid procedural accountability and deprived Plaintiff of the opportunity to seek timely relief.

These actions collectively demonstrate that the sua sponte extension not only failed to streamline the case but also prejudiced Plaintiff, a pro se litigant, by delaying resolution and creating unnecessary procedural hurdles.

---

**Improper Timing of Sua Sponte Extension**

Defendant asserts that the Court has discretion to extend deadlines prior to their expiration. While this is correct in principle, the timing of the sua sponte extension granted in **ECF No. 105** raises serious concerns about its fairness and intent. The Court issued this extension mere hours before midnight, effectively shielding the defendant from default judgment.

Had the extension been granted with adequate notice or upon a formal motion by Defendant, these concerns might not arise. However, this last-minute action:

- **Deprived Plaintiff of Procedural Rights**: Plaintiff was denied the opportunity to seek default judgment under **Rule 55**, which does not require judicial approval for the Clerk to enter default.
- **Rewarded Procedural Negligence**: Defendant failed to file a timely response and did not demonstrate good cause or provide any justification for their delay, yet the Court granted an extension unilaterally.

- **Created the Appearance of Procedural Bias**: The timing and circumstances of the extension was not issued to streamline the case, as stated, but to shield Defendant from the procedural consequences of their inaction.

This timing, combined with the absence of any motion or explanation from Defendant for their delay, highlights the prejudicial impact of the Court's decision. Defendant, a billion-dollar corporation with substantial legal resources, had ample opportunity to seek an extension through appropriate channels before the deadline. Their failure to do so reflects either negligence or a calculated reliance on judicial intervention to avoid default judgment.

---

**Failure to Streamline Proceedings**

The Court justified the sua sponte extension and grouping of motions as a means of streamlining proceedings. However, its actions have had the opposite effect:

1. **Post Hoc Requests for Transcripts**: The Court requested transcripts of the December 17, 2024, hearing after issuing the minutes **(Doc. 129)** without any motion or request from the parties. This action, recorded in **Doc. 131**, prolonged the process unnecessarily and contradicts the stated goal of streamlining the case.
2. **Unnecessary Consolidation**: Grouping unrelated motions, including Motion 96, diluted the urgency of Plaintiff's serious allegations while providing procedural cover for Defendant's delays.

3. **Prolonged Litigation**: Instead of expediting the case, these actions have delayed resolution and allowed Defendant to continue avoiding accountability for its procedural and evidentiary misconduct.

**Impact on Fairness and Judicial Integrity**

These procedural decisions have disproportionately benefited Defendant while undermining Plaintiff's ability to secure a fair and timely resolution of the case. The timing of the sua sponte extension, combined with the grouping of motions and subsequent delays, raises significant questions about the application of procedural rules and the impartiality of these proceedings.

Plaintiff respectfully requests that the Court reconsider its decision to group Motion 96 with unrelated motions, address the prejudicial impact of the sua sponte extension, and take appropriate steps to ensure that procedural fairness is restored.

**Preservation of Evidence and Acquisition Concerns**

The preservation order granted during the hearing primarily addressed concerns regarding the acquisition of Cfx.re by Rockstar Games. Plaintiff has reason to believe this acquisition may not have been conducted in compliance with applicable laws, as no corresponding SEC filing has been identified, which is required for material transactions involving public companies. This lack of transparency raises significant concerns about the legality of the acquisition and Defendant's conduct throughout the process. Adding to this, Titanium—a Rockstar Games employee—was

implicated in data breaches prior to the acquisition of Cfx.re. This raises serious questions about Rockstar's oversight and compliance during the acquisition. The fact that Titanium was simultaneously an employee of Rockstar and involved in breaches before the acquisition points to deeper systemic issues that warrant investigation. Such behavior not only casts doubt on the legality of the acquisition but also undermines the integrity of evidence presented by Defendant.

Despite having evidence sufficient to justify a spoliation order, the Court refrained from granting one. The Defendant failed to provide any evidence to support their claim of "data back-ups" or proof of preservation directives, even though such directives are privileged, they still could have been disclosed without compromising confidentiality. Instead, Defendant selectively engaged with the preservation order, offering assurances that data was preserved while simultaneously acknowledging that the Keymaster system—critical to Plaintiff's claims—was being rebuilt from scratch.

Even if the claimed "data back-ups" existed, this process still constitutes **alteration of evidence** and fails to meet the standard for preservation. Furthermore, Defendant carried out this rebuilding process without notifying the Court of their intention, all while knowing they were due to respond the very next day regarding the same evidence now destroyed.

The timing and nature of these actions cast doubt on Defendant's representations and highlight a deliberate disregard for the preservation order's intent. These factors collectively undermine the integrity of Defendant's claims and demand immediate judicial scrutiny to address spoliation and ensure accountability.

The combination of these issues calls into question the legitimacy of Defendant's procedural tactics and undermines their justification for the sua sponte extension granted by the Court. This

extension, made mere hours before Plaintiff was entitled to default judgment, is deeply suspect and appears to favor Defendant's delay tactics at the expense of judicial efficiency and fairness.

---

**Procedural Inequity and Bias**

The sua sponte extension and grouping of motions disproportionately benefited Defendant while undermining Plaintiff's ability to seek timely and fair remedies.

- Defendant, a billion-dollar corporation, has access to extensive legal resources, including multiple attorneys, and should have been capable of meeting its deadlines or requesting an extension.
- Plaintiff, a pro se litigant, faces significant prejudice due to procedural delays that enable the Defendant to continue evading accountability for its misconduct.
- The Court's decision to request transcripts, unprompted by any party, further delayed proceedings and undermined any claim that the grouping of motions was intended to streamline the case.

**Prejudicial Language and Implied Bias**

The Court's use of the term **"history"** in describing Plaintiff's actions is prejudicial and unsupported by specific examples. By failing to substantiate this claim with any actual reference to Plaintiff's filings or conduct, the statement unfairly casts Plaintiff in a negative light and is unwarranted bias against a pro se litigant.

**Prejudicial Use of "History" Without Basis**

The Court failed to provide any factual basis or examples to justify its characterization of Plaintiff's **"history."** Without specifics, and only 4 motions pending, this vague assertion creates an undue implication that Plaintiff has engaged in improper or excessive filings, which is untrue and unsupported by the record.

**Procedural Context of Plaintiff's Communications**

At the time of the Court's sua sponte extension **(see ECF No. 105),** Plaintiff had properly filed motions and communications in accordance with **Rule 55** of the Federal Rules of Civil Procedure. Plaintiff contacted the Clerk's Office for procedural questions on docs that were already filed by phone and email, as permitted under Rule 55, regarding Entry of Default **(see ECF No. 110)** and Default Judgment **(see ECF No. 119)**. **Rule 55** does not require judicial intervention for these communications, and any implication to the contrary is unfounded.

Additionally, there were only four motions pending at the time of the sua sponte extension **(see ECF Nos. 96, 100, 101, and 102)**. These motions are far from excessive, particularly for a Defendant with substantial legal resources. The sua sponte extension, granted mere hours before the default judgment deadline, disproportionately favored the Defendant and deprived Plaintiff of an opportunity for timely resolution under **Rule 55**.

**Disability and Access to Justice**

Plaintiff, as a pro se litigant with a disability, faced significant challenges in effectively presenting arguments during oral hearings. Plaintiff's disability limits the ability to argue complex procedural matters in real time, making written submissions a crucial avenue for

ensuring clarity and fairness in the proceedings. This inherent limitation was compounded by the Court's decision to group Plaintiff's motions and extend deadlines for Defendant, which further disadvantaged Plaintiff in navigating the litigation process.

The Magistrate Judge's explicit instructions during the prior hearing, directing Plaintiff to contact the Clerk of Court for procedural questions and providing her email address, acknowledged Plaintiff's need for additional accommodations. Plaintiff acted in good faith by following these instructions, and the inclusion of references to these communications at the bottom of **ECF No. 129** risks mischaracterizing Plaintiff's legitimate procedural actions as improper.

**Misplaced Reference to Communications**

The reference to Plaintiff's communications at the bottom of **ECF No. 129** appears misplaced and risks implying that Plaintiff engaged in improper conduct. These actions were entirely proper, consistent with procedural rules, and in accordance with the Court's explicit instructions during the prior hearing. Any implication that these communications were inappropriate disregards the procedural accommodations necessary for Plaintiff to effectively participate in the case.

**Contradictory Statements**

If the Court "anticipated additional activity" from Plaintiff and found that this activity created undue burden, it directly contradicts its duty to interpret pro se filings liberally under *Haines v. Kerner*, 404 U.S. 519 (1972). Furthermore, if such activity was indeed burdensome, it underscores the necessity of Plaintiff's previously requested court-appointed counsel—**requested twice**—to ensure procedural fairness and judicial efficiency. The failure to appoint counsel while simultaneously criticizing Plaintiff's filings creates bias, as it places undue

procedural expectations on a pro se litigant while withholding the necessary support to meet those expectations equitably.

---

**Specific Corrections to the Record**

1. **Clarification of Plaintiff's Concerns Regarding Evidence:**
   - Accurately reflect that Plaintiff's concerns pertain to the selective presentation of evidence, procedural improprieties in the Reply Brief (Doc. 90), and the introduction of misleading evidence designed to create a false connection to Plaintiff's account.
   - Address the contradictory statements made by Defendant's attorney, which undermine the credibility of the evidence submitted.

2. **Improper Grouping of Motion 96:**
   - Acknowledge that the grouping of Motion 96, which raised serious allegations of procedural misconduct and improper use of evidence, with unrelated motions diluted its significance and unfairly shielded Defendant from default judgment.
   - Recognize that the sua sponte extension, granted mere hours before midnight, disproportionately benefited Defendant while creating undue procedural hurdles for Plaintiff.

3. **Preservation Order and Acquisition Concerns:**
   - Correct the record to reflect that the preservation order was not related to the already admittedly spoiled Keymaster data but addressed broader issues,

    including the legality of the Cfx.re acquisition by Rockstar Games and its implications for this case.

    ○ Highlight that Defendant failed to provide sufficient evidence of data preservation despite assurances, further undermining the integrity of their claims.

4. **Procedural Context and Mischaracterization of Plaintiff's Actions:**

    ○ Address the misplaced reference to Plaintiff's communications with the Clerk's Office in ECF No. 129 and clarify that these actions were proper, in accordance with Rule 55, and consistent with the Magistrate Judge's explicit instructions during the prior hearing.

    ○ Remove any implication that Plaintiff's procedural actions were improper, particularly given the accommodations necessary for Plaintiff as a pro se litigant with disabilities.

5. **Bias in Language and Procedural Decisions:**

    ○ Remove the vague and unsupported assertion of Plaintiff's "history" of filings, as it unfairly casts Plaintiff in a negative light without factual basis.

    ○ Address the contradiction between the Court's acknowledgment of Plaintiff's challenges as a pro se litigant with disabilities and its procedural decisions that disproportionately favored Defendant, such as the sua sponte extension.

6. **Failure to Streamline Proceedings:**

    ○ Recognize that the stated intent to streamline proceedings was undermined by the post hoc request for transcripts (Doc. 131), which unnecessarily prolonged the litigation.

- - Reflect that the grouping of unrelated motions and the sua sponte extension created uncertainty and delays, contrary to the stated goal of expediting the case.
  - 

**Conclusion**

For the reasons stated above, Plaintiff respectfully objects to the Courtroom Minutes **(Doc. 129)** and requests that the record be corrected to accurately reflect Plaintiff's concerns and objections. Plaintiff further requests that the Court reconsider its decision to group **Motion 96** with unrelated motions and address the procedural inequities that have disproportionately benefited the Defendant.

**Respectfully submitted,**

*Colton John Harris*

3100 Wood Ave, Lot G17

Colorado Springs, CO 80907

Email: thecoltonjohn@gmail.com

DATED: [12-31-2024]