IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24–cv–01508–PAB–MDB

COLTON JOHN HARRIS,

     Plaintiff,

v.

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

     Defendant.

---

**RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Maritza Dominguez Braswell**

     This matter is before the Court on Defendant's Motion to Dismiss Third Amended Complaint Pursuant to F.R.C.P. 12(b)(6). (["Motion to Dismiss"], Doc. No. 76.) Plaintiff has filed a response, to which Defendant has replied. (["Response"], Doc. No. 89; ["Reply"], Doc. No. 90.) With leave of the Court, Plaintiff also filed a surreply. (["Surreply"], Doc. No. 94.) After reviewing the Motion to Dismiss, briefing, and relevant law, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

     Also before the Court are eighteen motions and several "notices" filed by Plaintiff.[1] Additionally, on May 5, 2025, Defendant filed a Motion for Clarification to determine which of Plaintiff's filings require a response. (Doc. No. 201.) In this Recommendation and Order, the

---

[1] All eighteen motions been referred to this Court by the presiding judge. (*See* Docs. No. 96; 100; 101; 102; 107; 109; 113; 116; 117; 120; 137; 152; 160; 175; 178; 185; 192; 199.)

Court addresses the Motion for Clarification, and every Plaintiff-filed motion that directly relates to the Motion to Dismiss.[2] All other motions shall be addressed only if the presiding judge rejects this Court's Recommendation, and finds that some or all of Plaintiff's claims survive the Motion to Dismiss.

## SUMMARY FOR *PRO SE* PLAINTIFF

The Court has reviewed your motions and granted, in part, your requests to (i) exclude Defendant's purported evidence of the post-acquisition agreements, and (ii) clarify the Court's authority to extend response deadlines. However, the Court is declining to grant your requests to strike the Motion to Dismiss, impose sanctions on Defendant, and enter default judgment against Defendant. The Court also declines to reconsider its prior decision to permit Defendant to file a consolidated response to your motions.

The Court further recommends dismissing your claims against Defendant. First, your unjust enrichment claim is precluded because there is an express contract between you and Defendant that governs user-generated content. Next, you have not alleged sufficient facts to state a claim under the CFAA, CCPA, or Colorado privacy law. Finally, because you lack standing to bring a claim under the Sherman and Clayton Acts, those claims should be dismissed as well.

This is only a high-level summary of the Court's Recommendation. The full Recommendation, including information about your right to object to it, is set forth below.

## BACKGROUND

***Factual Background***

---

[2] (*See* Docs. No. 96; 100; 101; 102; 107; 109; 120; 137; 160; 175; 178; 185.)

Defendant Take-Two Interactive Software, Inc. is the parent company of Rockstar Games, Inc., the developer of *Grand Theft Auto V* and its online multiplayer mode *Grand Theft Auto Online* (together, "GTAV"). (Doc. No. 76 at 1.) Plaintiff is a user of Defendant's services through GTAV, and through the platform FiveM, which Defendant acquired in August 2023 as part of its acquisition of CitizenFX ("CFX.re."). (*Id*. at 1-2.) FiveM is an online platform that allows users to host their own version of GTAV and share user-generated content ("UGC") for GTAV with other players. (*Id*. at 2.) On April 17, 2019—which was prior to Defendant's acquisition of CFX.re—Plaintiff created a FiveM account. (Doc. No. 73 at ¶ 6.)

In this action, Plaintiff alleges that on or about March 5, 2024, Defendant accessed Plaintiff's FiveM account and data without authorization, and then wrongfully appropriated Plaintiff's digital assets and locked Plaintiff out of his account. (*See generally id*.) Defendant contends Plaintiff's FiveM account was deactivated because Defendant identified potentially infringing content[3] and violations of community policies associated with the account, in violation of Rockstar's Terms of Service and End User License Agreement and FiveM's Creator Platform License Agreement. (Doc. No. 76 at 2.)

***Procedural History***

Plaintiff initiated a state court action in the District Court for El Paso County on March 7, 2024. (Doc. No. 3.) Defendant removed Plaintiff's claims to this Court on May 29, 2024. (Doc. No. 1.) In his Third Amended Complaint, Plaintiff asserts claims for (i) violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030; (ii) breach of privacy; (iii) violation

---

[3] *See* Doc. No. 73-6 (list of potentially infringing digital assets provided to Plaintiff).

of consumer protection laws under the Colorado Consumer Protection Act (CCPA), C.R.S. § 6-1-101 *et seq*.; (iv) violations of antitrust laws under the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 12 *et seq*.; and (v) unjust enrichment. (Doc. No. 73 at ¶¶ 23-68.) Plaintiff seeks statutory, punitive, and non-economic damages totaling $1,250,000. (*Id*. at ¶¶ 92-99.) Defendant filed the instant Motion to Dismiss on September 23, 2024, arguing Plaintiff fails to state a claim upon which relief may be granted. (*See generally* Doc. No. 76.) Plaintiff responded to the Motion to Dismiss, filed several motions related to the same, and recently filed a summary judgment motion as well (Doc. No. 199).

## LEGAL STANDARDS

### I.     Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on such a motion, a court accepts all well-pleaded facts as true and views the allegations in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). However, the plaintiff bears the burden of presenting a complaint with enough factual details to suggest entitlement to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). Ultimately, courts assess "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

II.     *Pro Se* **Plaintiff**

The Court is mindful that Plaintiff proceeds *pro se* and thus affords his papers and filings a liberal construction. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 F.3d 855, 864 n.1 (10th Cir. 2019). But the Court cannot and does not act as his advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

I.     **Motion to Dismiss**

In its Motion to Dismiss, Defendant contends Plaintiff has failed to state a single claim. (Doc. No. 76 at 6.) The Court carefully considers each of Plaintiff's claims, below.

### A.  Unjust Enrichment Claim

The Court begins with Plaintiff's unjust enrichment claim. Plaintiff alleges Defendant released a digital candy cane weapon and snowball launcher in GTAV that are "identical and substantially similar to Plaintiff's digital assets." (Doc. No. 73 at ¶¶ 60-62.) He contends Defendant used Plaintiff's UGC—without permission or compensation—to develop and sell these weapons, and therefore "unjustly benefit[ed] from Plaintiff's creative work." (*Id.* at ¶ 62.)

To bring a claim for unjust enrichment, a plaintiff must establish that "(1) defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). Equitable remedies are normally available only when a remedy at law is inadequate. *Tyler v. City of Manhattan*, 118 F.3d 1400,

1416 (10th Cir. 1997). Under Colorado law, an express contract precludes an implied-in-law contract. *See Interbank Investments, LLC v. Eagle River Water and Sanitation Distr.*, 77 P.3d 814, 816 (Colo. App. 2003); *see also Cross Country Land Servs., Inc. v. PB Telecommunications, Inc.*, 276 F. App'x 825, 835 (10th Cir. 2008) (affirming dismissal of unjust enrichment claim where express contract existed between parties); *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1154 (10th Cir. 2023) (same). In other words, when an express contract governs the relationship and subject matter between two parties, there can be no unjust enrichment claim on the same subject matter.

Defendant denies using Plaintiff's UGC to create the digital candy cane weapon and snow launcher but argues that, even if it had, Plaintiff's unjust enrichment claim fails as a matter of law because there is an express contract between the parties that governs the use of UGC, and allows Defendant to "use, reproduce, copy, adapt, edit, modify, distribute, perform, display, publish, broadcast, transmit, translate, create derivative works based on, or otherwise exploit" any UGC created or shared through FiveM. (Doc. No. 76 at 14-15.)

In response, Plaintiff argues he never "voluntarily or validly" accepted the terms of use, as "[t]hese terms were unfairly imposed after [Defendant's] acquisition of CFX.re, without proper notice or opportunity for rejection." (Doc. No. 89 at 14-15.)

In determining whether Plaintiff's unjust enrichment claim should proceed, the Court must first determine whether there is an express agreement that governs the subject matter of the unjust enrichment claim. *See McAuliffe*, 69 F.4th at 1154 (upholding district court's finding that an express contract precluded unjust enrichment claim on a motion to dismiss). Defendant contends there is indeed an express agreement, in the form of the Rockstar Terms of Service,

(["Rockstar Terms"] Doc. No. 76-2); the Rockstar End User License Agreement, (["Rockstar

End User License"] Doc. No. 76-3); and the FiveM Creator Platform License Agreement,

(["FiveM License"] Doc. No. 76-4). Defendant attaches these as Exhibits 1-3 to its Motion to

Dismiss.[4]

    Ordinarily a court will not consider documents and information outside the four corners

of the complaint. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("Generally, the

sufficiency of a complaint must rest on its contents alone."). However, when a "document is

referred to in the complaint and is central to the claim, a defendant may submit an authentic copy

to the court to be considered on a motion to dismiss." *GFF Corp. v. Assoc'd Wholesale Grocers,

Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, Plaintiff's Complaint references the terms of

use, albeit to argue he did not accept them. (*See* Doc. No. 73 at ¶¶ 27; 49; 68.) Moreover, the

terms of use are central to Plaintiff's claims because they expressly concern UGC, which

underpins every claim Plaintiff brings against Defendant. (*See, e.g., id*. at ¶¶ 29; 34-35; 44-47;

54-56; 60-65.) And though Plaintiff raises concerns with respect to *one* of the purported

agreements—the FiveM License,[5] (Doc. No. 76-4), he does not appear to dispute the authenticity

---

[4] The FiveM License was updated following Defendant's acquisition of CitizenFX. (*See* Doc. No. 76-4.)
Specifically, Defendant contends that when users first logged into FiveM after the acquisition, they were
presented with a pop-up screen announcing the new FiveM License and giving them access to the entire
agreement for review prior to acceptance. (Doc. No. 90 at 2.) In its Reply, Defendant includes a
screenshot of this pop-up screen. (*Id*. at 3.)

[5] Notably, Plaintiff has not expressly disputed the authenticity of the FiveM License. Instead, Plaintiff
raises the specter of inauthenticity as to the screenshot of the pop-up announcing the updated terms of the
FiveM License. (*See* Doc. No. 94 at 3 ("Defendant introduced a generic, blurred, and edited screenshot");
Doc. No. 96 at 4 ("The absence of identifiable account-specific details raises concerns about selective
editing or misrepresentation"); *id*. (arguing the screenshot "deprived [him] of the ability to fully respond
and verify the evidence's authenticity and context").) And even though the Court allowed Plaintiff an
opportunity to file a surreply to address authenticity issues, (Doc. No. 93; *see also* ["Surreply"], Doc. No.
94), Plaintiff has not presented any information to support his bare assertions related to inauthenticity. *See
United States v. Isley*, 386 F. App'x 117, 120 (3d Cir. 2010) (declining to find documents inauthentic

of the Rockstar Terms, (Doc. No. 76-2), or the Rockstar End User License, (Doc. No. 76-3)

(together, "Rockstar Agreements"). Indeed, while Plaintiff expressly contends he is governed by

an earlier version of the FiveM License and attaches the earlier version of the FiveM License,

(*see* Doc. No. 89 at 2; Doc. No. 89-1), he does not make the same claims with respect to the

Rockstar Agreements, nor does he attach a different version of the Rockstar Agreements, nor

does he expressly dispute the authenticity of the Rockstar Agreements. Thus, the Court will not

consider the FiveM License or associated screenshot, (Doc. No. 90 at 3), but it will consider the

Rockstar Agreements. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)

("[T]he district court may consider documents referred to in the complaint if . . . the parties do

not dispute the documents' authenticity").

    Next, the Court turns to the Rockstar Agreements themselves to determine whether they

constitute an express agreement(s) between Plaintiff and Defendant, and whether the terms

govern the subject matter at issue in Plaintiff's unjust enrichment claim. *See McAuliffe*, 69 F.4th

at 1154.

    *First*, it is clear the Rockstar Agreements are agreements between Plaintiff and

Defendant.[6] (*See* Doc. No. 76-2 at 2 ("This document constitutes an agreement . . . between you

---

where defendants "offer[ed] nothing but speculation that the interrogatories are anything but authentic
and accurate."). At best, Plaintiff argues Defendant does not "provide[] direct verification" that the
screenshot came from Plaintiff's personal account. (Doc. No. 94 at 3.) In any event, because Plaintiff
contends he is not bound by the FiveM License, (*see, e.g.*, Doc. No. 89 at 2 ("Defendant has failed to
present any evidence of a signed agreement demonstrating that Plaintiff accepted the CFX.re Platform
Service Agreement, FiveM Platform Service Agreement and the Creator Platform License Agreement
after [Defendant's] acquisition.")), and because Plaintiff argues is not bound by any terms that were
updated post-acquisition, (*see, e.g., id.* at 14-15 ("These terms were unfairly imposed after [Defendant's]
acquisition of CFX.re, without proper notice or opportunity for rejection.")), the Court will not consider
the FiveM License or the related screenshot.

[6] Though Plaintiff argues Defendant has not provided any *signed* agreements as evidence, (*see* Doc. No.
89 at 4), courts have routinely held that electronic acceptance of terms of use creates a binding agreement.

[Plaintiff] and the United States company Rockstar Games, Inc., its parent Take-Two Interactive Software, Inc., . . . that governs the relationship between you and the Company"); Doc. No. 76-3 at 2 ("By opening, downloading, . . . or otherwise using the software . . . you [Plaintiff] agree to be bound by the terms of this agreement with the United States Company Rockstar Games, Inc., its parent Take-Two Interactive Software, Inc., subsidiaries, and affiliates").)

*Second*, both Rockstar Agreements address the subject matter at issue in the unjust enrichment claim. For example, the Rockstar Terms provide that, "[b]y creating *UGC*," users are granting Defendant a license to "*use*, copy, sublicense, adapt, transmit, publicly perform, or display *any such material*." (Doc. No. 76-2 at 3 (emphasis added).) Such use is at issue in Plaintiff's unjust enrichment claim, which concerns Defendant's alleged *use* of Plaintiff's *UGC* to create and distribute "identical and substantially similar" weapons on GTAV. (*See* Doc. No. 73 at ¶¶ 61-65.) Similarly, the Rockstar End User License grants Defendant a license to "reproduce, copy, adapt, modify, perform, display, [and] publish" UGC. (Doc. No. 76-3 at 4.)

---

(Doc. No. 90 at 3 (citing *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012)).) And while Plaintiff appears to raise coercion and contract of adhesion arguments, (*see* Doc. No. 89 at 15; Doc. No. 73 at ¶ 55), those arguments appear to concern the FiveM License, only. (*See* Doc. No. 89 at 4 ("Even if [Defendant] asserts that the new Creator Platform License Agreement (2023) governs Plaintiff's account, this claim is invalid. Plaintiff was never informed of or consented to these terms."); *id.* at 2 ("The circumstances surrounding the imposition of these new terms made it impractical for users to retain access to their pre-existing assets without facing significant restrictions.").) But even if Plaintiff intended those arguments to apply to all agreements, his allegations are unspecific and conclusory. The mere fact that users are required to accept terms before using Defendant's services, or that Plaintiff disagrees with the substance and presentation of the terms, does not render an agreement a contract of adhesion. *See Sall v. G.H. Miller & Co.*, 612 F. Supp. 1499, 1506 (D. Colo. 1985) (declining to find adhesion contract on motion to dismiss where plaintiffs failed to allege "that there was great disparity in bargaining power between the parties, that the defendant's services could not be obtained elsewhere, or that there was no opportunity for negotiation.").

*See also Titan Mfg. Sols., Inc. v. Nat'l Cost, Inc.*, No. 19-cv-1749-WJM-SKC, 2021 WL 307509, at *7 (D. Colo. Jan. 29, 2021) (holding that plaintiff's unjust enrichment claim "arises out of the Licensing Agreement and is thus barred, as the express contract precludes any implied-in-law contract."). In other words, both Rockstar Agreements govern UGC, as well as the usage rights associated with UGC, and that is precisely what is at issue in Plaintiff's unjust enrichment claim.

Accordingly, Plaintiff's unjust enrichment claim is precluded as a matter of law. *See McAuliffe*, 69 F.4th at 1153 (upholding district court's dismissal of unjust enrichment claim under Rule 12(b)(6) where an express contract covered substance of allegations); *Jones v. Sturm, Ruger & Co., Inc.*, No. 22-cv-1233 (KAD), 2024 WL 1307148, at *7 (D. Conn. Mar. 27, 2024) ("[T]here was an express agreement in the form of the Privacy Policy and Terms of Use between Plaintiffs and [Defendants], and it is therefore appropriate to dismiss Plaintiffs' unjust enrichment claim.").[7]

### B. Computer Fraud and Abuse Act (CFAA)

Plaintiff alleges Defendant violated the CFAA through its employee "Titanium," who "demanded access to Plaintiff's asset IDs through a serious of persistent requests" and, after Plaintiff refused, "accessed Plaintiff's protected assets and data without authorization." (Doc. No. 73 at ¶¶ 24-25.) Defendant argues Plaintiff fails to adequately plead a claim for violation of the CFAA. (Doc. No. 76 at 7.) The Court agrees.

---

[7] Plaintiff's argument that the Rockstar Agreements do not "specifically concern[] Plaintiff's use of the FiveM/CFX.RE platform," (*see* Doc. No. 198 at 1; Doc. No. 73 at ¶ 5), is of no moment to this part of the Court's analysis. The question is not whether the Rockstar Agreements cover every aspect of the Plaintiff's relationship with Defendant. The question is whether there are *any* express agreements between Plaintiff and Defendant that govern the subject of Plaintiff's unjust enrichment claim, which is UGC. *See generally Interbank Investments*, 77 P.3d at 816; *Titan Mfg. Sols.*, 2021 WL 307509, at *7.

To state a claim under the CFAA, a plaintiff must allege the defendant (i) intentionally accessed a protected computer; (ii) without or exceeding authorization; and (iii) obtained information from the protected computer. *Wolf v. Schadegg*, No. 15-cv-01035-KLM, 2016 WL 1117364, at *2 (D. Colo. Mar. 21, 2016) (citing 18 U.S.C. § 1030(a)(2)(C)). A civil action is only available if the offense caused specified consequences, one of which is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). The term "protected computer" is defined by the statute as a computer "used in interstate or foreign commerce or communication." *Id*. § 1030(e)(2).

Here, Plaintiff does not allege that Defendant accessed a protected computer. Rather, Plaintiff contends Defendant improperly accessed digital assets stored in his Keymaster[8] *account*, (Doc. No. 73 at ¶ 24), which—as Defendant points out—is not a computer. (Doc. No. 76 at 8; *see also* Doc. No. 73 at ¶¶ 14; 22 (referring to Keymaster as an account).) Even if Plaintiff is correct in asserting that his account was housed in a protected computer, (*see* Doc. No. 73 at ¶ 30), Plaintiff does not allege that Defendant ever attempted to log into or otherwise access his physical computer. *See Satcom Sol. & Res. LLC v. Pope*, No. 19-cv-02104-CMA-GPG, 2020 WL 4511773, at *10 (D. Colo. Apr. 20, 2020), *report and recommendation adopted*, No. 19-cv-02104-CMA-NRN, 2020 WL 2188922 (D. Colo. May 6, 2020) (plaintiff's allegations that defendant logged into plaintiff's computer system, accessed its database, and downloaded its master customer and marketing distribution lists was sufficient to show defendant accessed a

---

[8] Keymaster is FiveM's authentication system, as well as "a tool designed to protect user assets by encrypting them." (Doc. No. 73 at ¶ 20.) In other words, Keymaster allows users to securely "lock [their] files" and protect their UGC or other assets "from being sold to a third party [or] from unauthorized access." (*Id*.)

protected computer); *Coll. Pharmacy, Inc. v. Ruth*, No. 06-cv-00540 WYD-BN, 2006 WL

3746134, at *2 (D. Colo. Dec. 15, 2006) (where claim was permitted because plaintiff alleged

defendants accessed and disseminated trade secrets contained within plaintiff's computer

systems). Finally, to the extent Plaintiff argues Keymaster qualifies as a "protected system"

under the CFAA, (*see* Doc. No. 89 at 3), the assertion is conclusory and does not have a basis in

fact or law. Accordingly, Plaintiff's CFAA claim should be dismissed.[9]

### C.  Breach of Privacy

Next, Plaintiff alleges Defendant's "unauthorized access to Plaintiff's account and data

constitutes a serious violation of privacy under Colorado common law" and "represents an

unreasonable intrusion upon Plaintiff's seclusion." (Doc. No. 73 at ¶ 32.)

Colorado courts recognize three torts relating to the invasion of privacy: (1) unreasonable

intrusion on the seclusion of another; (2) unreasonable publicity given to another's private life;

and (3) appropriation of another's name or likeness. *See Slaughter v. John Elway Dodge

Southwest/AutoNation*, 107 P.3d 1165, 1170-71 (Colo. Ct. App. 2005). "To prevail on a claim

for intrusion upon seclusion . . . , a plaintiff must show that another has intentionally intruded,

physically or otherwise, upon the plaintiff's seclusion or solitude, and that such intrusion would

be considered offensive by a reasonable person." *Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060,

---

[9] Defendant also argues that accessing Plaintiff's account did not exceed authorization because Plaintiff "expressly acknowledged and agreed to the Terms of Use, which state that [Defendant] can access his account to moderate content and to modify, take-down, suppress, block, hide, remove, or delete his UGC." (Doc. No. 76 at 8.) The Court need not reach this argument, but notes that under the Rockstar Agreements, Defendant has broad access to Plaintiff's assets. (*See* Doc. No. 76-2 at 3 ("We reserve the right to remove . . . any UGC or content for any (or no) reason whatsoever."); Doc. No. 76-3 at 4 ("[Y]ou hereby grant Licensor an exclusive . . . right and license to use your contributions in any way and for any purpose in connection with the Software and related goods and services.").)

1065 (Colo. App. 1998), *as modified on denial of reh'g* (Aug. 6, 1998). The tort encompasses both physical intrusions and "intrusions into a person's private concerns based upon a reasonable expectation of privacy in that area." *Id*. at 1068. To be offensive to a reasonable person, an intrusion must be conducted in an unreasonable manner or for an unwarranted purpose. *See id*. at 1069 (citations omitted).

Here, Plaintiff only alleges the intrusion was highly offensive to him, personally. (*See* Doc. No. 73 at ¶ 35.) He does not offer any facts from which the Court could conclude the alleged intrusion would be offensive to a reasonable person, nor does he offer facts giving rise to a reasonable expectation of privacy. Indeed, according to Plaintiff's own assertions, the opposite is true. The gaming platform is built for community interaction. (*See, e.g.*, Doc. No. 73 at ¶¶ 7; 14; 16 (referring to CFX.re community forums).) Moreover, Plaintiff's access to the gaming platform is governed by the Rockstar Agreements, which expressly authorize Defendant to access the platform. (*See* Doc. No. 76-2 at 2 ("The Company [Defendant] may change, suspend or discontinue Online Services."); Doc. No. 76-3 at 7 (noting Defendant has access to users' information); *id*. at 6 (noting Defendant may "terminate, suspend, or modify . . . User Account[s].").) These terms suggest Plaintiff *did not* have an expectation of privacy, and that any intrusion consistent with the Rockstar Agreements, would <u>not</u> be offensive. *See generally Brudwick v. Minor*, No. 05-cv-00601-WYD-MJ, 2006 WL 1991755, at *20 (D. Colo. July 13, 2006) (finding plaintiffs did not allege a plausible claim for intrusion on their seclusion where the officers who "intruded" were acting pursuant to a validly-issued search warrant).[10]

_____

[10] Plaintiff appears to argue in his Response, for the first time, that Defendant also invaded his privacy by giving unreasonable publicity to his private life and appropriating his name and likeness. (*See* Doc. No.

### D. Colorado Consumer Protection Act (CCPA)

Plaintiff alleges that Defendant "used the Keymaster encryption software, which was originally designed to protect assets from leaks, in a manner that deceptively allowed them to access and claim ownership of Plaintiff's data," in violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.* (Doc. No. 73 at ¶ 42.) Plaintiff further claims that Defendant "misrepresented the purpose and function of the Keymaster software to the public, leading consumers, including Plaintiff, to believe that their digital assets would be protected from unauthorized access" and that "all users of Cfx.re . . . rely on the integrity of Keymaster to safeguard their intellectual property." (*Id.* at ¶¶ 43-44.)

To state a claim under the CCPA, a plaintiff must allege:

(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003)).

Plaintiff's allegations are insufficient to state a claim under the CPAA. First, Plaintiff's allegation that Defendant engaged in a deceptive practice by "misrepresent[ing] the purpose and function of Keymaster software to the public," (Doc. No. 73 at ¶ 43), is entirely conclusory. He offers no facts to support such a claim, and the Court cannot infer from his alleged facts that

---

89 at 7-8.) But he does not make such allegations in his Complaint and, in any event, the alleged facts in the Response are insufficient to state a viable claim.

Defendant misrepresented the purpose and function of Keymaster. Second, Plaintiff does not

establish how Defendant's alleged conduct significantly impacts the public. Although Plaintiff

alleges possible consequences to the public, the allegations are speculative and conclusory. (*See,

e.g., id.* at ¶ 44 ("[I]f other developers were to lose control over their intellectual property (IP)

due to this deceptive practice, Defendant could potentially release these assets in their own

downloadable content"); *id.* at ¶ 48 ("[O]ther users may have similarly lost rights to their digital

assets")). And while Plaintiff generally recites the elements of a CCPA claim, (*see, e.g., id.* at ¶

44 (alleging Defendant's conduct "has the potential to harm a broad spectrum of consumers and

developers who are actual or potential users of Defendant's services.")), he does not go beyond

this formulaic recitation to offer supporting facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

554 (2007) (noting "[f]actual allegations must be enough to raise a right to relief above the

speculative level" and "a formulaic recitation of the elements of a cause of action will not do").

Finally, Plaintiff's alleged injuries appear to be entirely personal to him—which is insufficient to

state a claim under the CCPA. *See Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006) ("The CCPA

can not be used to remedy a purely private wrong.").

### E.  Sherman Act and Clayton Act

Plaintiff alleges Defendant violated the Sherman Act and the Clayton Act. (Doc. No. 73

at ¶¶ 50-58.)

The Sherman Act prohibits "every contract, combination, or conspiracy in restraint of

trade, and any "monopolization, attempted monopolization, or conspiracy or combination to

monopolize." 15 U.S.C. §§ 1-2 *et seq*. The Clayton Act prohibits mergers and acquisitions where

the effect "may be substantially to lessen competition, or to tend to create a monopoly." 15

U.S.C. § 18. The Clayton Act authorizes a private right of action for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." *Id*. at § 15(a).[11]

A private plaintiff suing for violations of federal antitrust laws must have standing to sue under Article III of the U.S. Constitution (like all plaintiffs in federal court), as well as "antitrust standing." *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006). These are separate inquiries, and "the standing requirements in the antitrust context [are] more rigorous than that of the Constitution." *Id*. To establish antitrust standing, the plaintiff must allege an injury that poses an adverse effect to competition or consumers, not simply an injury to a competitor; that is, there must be an injury that flows from the "competition-reducing aspect or effect" of the defendant's behavior. *Elliott Industries Ltd. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124–25 (10th Cir. 2005). Thus, the existence of an actionable injury must be examined "from the consumer's viewpoint," to ascertain whether the alleged conduct "affected the prices, quantity or quality of goods or services, not just [the plaintiff's] own welfare." *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 638 (10th Cir. 2008). "In short, the injury to the plaintiff and the injury to competition must be one and the same." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint. Inc.*, 863 F. Supp. 2d 1066, 1089 (D. Colo. 2012).

Here, Plaintiff argues Defendant's "monopolistic practices have resulted in a significant reduction in competition, thereby degrading the overall quality, diversity, and innovation of

---

[11] The Sherman Act does not itself provide a private right of action, and Plaintiff's right to sue is instead established by Section 4 of the Clayton Act. *Tompkins v. LifeWay Christian Res. of S. Baptist Convention*, No. 17-CV-0460 RB/KRS, 2018 WL 6632070, at *11 n.9 (D.N.M. Dec. 19, 2018), *aff'd*, 784 F. App'x 559 (10th Cir. 2019) (citing *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 519 (S.D.N.Y. 2013)). The Court will construe Plaintiff's claim "to invoke the private-right-of-action provisions of the Clayton Act." *Id*. (citation omitted).

digital assets available to consumers," and that "[t]his reduction in market competition is the

exact harm that the Sherman and Clayton Acts are designed to prevent." (Doc. No. 73 at ¶ 56.)

He further alleges, "[t]he injury is not merely individual or isolated but reflects broader

anticompetitive effects that harm the entire market for digital assets." (*Id*.) Specifically, Plaintiff

alleges that, "through its acquisition of CFX.re and control over Keymaster," Defendant has

"substantially lessened competition in the market by consolidating control over both the platform

and the means of asset protection, which has led to a monopoly over digital assets." (*Id.* at ¶ 53.)

He further alleges that Defendant has "used its dominant market position to unfairly dominate

the market for digital assets," and "impose[ ] restrictive conditions" that "constitute an

unreasonable restraint of trade because they force developers to either accept terms that grant

[Defendant] ownership or control of their digital assets or face significant limitations on their

ability to distribute and monetize their work independently." (*Id.* at ¶¶ 51-52.) In other words,

Plaintiff appears to assert that, by acquiring CitizenFX, Defendant has monopolized the "digital

asset market" and restricted the ability of users to "distribute and monetize" their own digital

assets. (*See generally id.* at ¶¶ 50-58.)

However, Plaintiff's allegations that Defendant's acquisition of CitizenFX and imposition

of new terms have reduced competition in the market as a whole, are vague and conclusory.

Plaintiff and other users' dissatisfaction with the acquisition, does not mean Defendant engaged

in anticompetitive behavior. At best, Plaintiff has shown that he has been unable to distribute and

monetize his own digital assets. (*See* Doc. No. 73 at ¶ 47.) But such individual harm is

insufficient to state an antitrust claim. *See Tompkins v. LifeWay Christian Res. of S. Baptist

Convention*, No. 17-CV-0460 RB/KRS, 2018 WL 6632070, at *12 (D.N.M. Dec. 19, 2018),

*aff'd*, 784 F. App'x 559 (10th Cir. 2019) (holding plaintiffs lacked standing to bring Sherman

Act claim because they "do not plead any facts to show that Defendants' alleged conspiracy

harmed the market as a whole, only that they were individually harmed."). Moreover, Plaintiff's

primary contention is that Defendant accessed and deactivated Plaintiff's FiveM account, as well

as allegedly appropriated his UGC. (*See generally* Doc. No. 73.) This alleged injury has no

adverse effect on competition or consumers generally. In other words, Plaintiff "pays lip service

to an antitrust injury," but the Complaint "makes clear that the real injury [Plaintiff] seeks to

vindicate is one suffered by [Plaintiff], not competition." *GDHI Mktg. LLC v. Antsel Mktg. LLC*,

416 F. Supp. 3d 1189, 1203 (D. Colo. 2019). Accordingly, Plaintiff's antitrust claims should be

dismissed for lack of standing.[12]

## II.    Additional Motions

### A.  Defendant's Motion for Clarification (Doc. No. 201)

The Court grants Defendant's Motion for Clarification and clarifies that Defendant need

not provide responses to the following filings: Docs. No. 185; 186; 188; 189; 190; 191; 192; 193;

194; 196; 197; 198. The Court agrees these motions and filings appear directed at the Court, and

do not require a response from Defendant.

### B.  Plaintiff's Motion to Exclude Electronic Evidence of Consent (Doc. No. 120)

---

[12] Even if Plaintiff alleged enough facts to demonstrate standing, the claim suffers from other deficiencies. Plaintiff does not plausibly allege the existence of a conspiracy or agreement to engage in unlawful activity, as is required to state a claim under the Sherman Act. *See Tompkins*, 2018 WL 6632070, at *12. Nor does he sufficiently define what "relevant market" Defendant is allegedly monopolizing. *See Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 756 (10th Cir. 1999). His references to the "market for digital assets," (*see* Doc. No. 73 at ¶¶ 51; 56; Doc. No. 89 at 11), are unclear and overbroad. *See Drake v. Cox Commc'ns, Inc.*, No. 10-2671-JTM, 2011 WL 2680688, at *3 (D. Kan. July 8, 2011).

Plaintiff filed a motion to "exclude any electronic evidence purportedly showing Plaintiff's consent" to the agreements that were updated post-acquisition (*i.e.*, the FiveM License). (*See* Doc. No. 120 at 1.) As noted above, the Court has declined to consider the FiveM License and associated screenshot in connection with the instant Motion to Dismiss. (*See supra* pp. 6-8.) Thus, Plaintiff's Motion to Exclude Electronic Evidence (Doc. No. 120) is granted, in part.

**C.  Plaintiff's Motion for Sanctions Related to Screenshot (Doc. No. 96)**

Plaintiff also seeks sanctions in connection with Defendant's use of the screenshot. (*See* Doc. No. 96.) As noted above, the Court has declined to consider the screenshot. (*See supra* p. 8.) Moreover, the submission itself does not warrant sanctions because it is not a violation of the Court's stay, and certain documents may be considered at the motion to dismiss stage. *See GFF Corp.*, 130 F.3d at 1384 ("[When a] document is referred to in the complaint and is central to the claim, a defendant may submit an authentic copy to the court to be considered on a motion to dismiss."). Thus, Plaintiff's Motion for Sanctions (Doc. No. 96) is denied.

**D.  Plaintiff's Motions Related to the Motion for Sanctions (Docs. No. 107; 109; 137; 178; 185)**

Plaintiff also filed a Supplementary Motion for Default Judgment and Sanctions (Doc. No. 107), seeking sanctions and default judgment because Defendant did not respond to Plaintiff's Motion for Sanctions (Doc. No. 96) within 21 days. But the Court extended Defendant's time to respond. (*See* Doc. No. 105.) A court may *sua sponte* extend the time for a party to respond to a motion. *See* Fed. R. Civ. P. 6(b)(1)(A). Here, Plaintiff filed multiple motions with overlapping issues, and the Court determined there was good cause for an extension and ordered Defendant to file a consolidated response. (*See* Doc. No. 105; Doc. No.

148 at 27:1-15.) The extension was not prejudicial to Plaintiff nor procedurally improper. The Court therefore declines to reconsider its decisions to extend Defendant's response deadline and allow Defendant to file a consolidated response to multiple motions. Plaintiff's Supplementary Motion for Default Judgment and Sanctions (Doc. No. 107), Objection to Minute Order on Procedural Handling of Motions (Doc. No. 109), and Objection to Courtroom Minutes (Doc. No. 137)[13] are therefore denied.

Also related to the Motion for Sanctions (Doc. No. 96) and the Court's extension of Defendant's response deadline (Doc. No. 105), Plaintiff filed a Motion for Clarification Regarding Court's Application of the 21-Day Rule (Doc. No. 178), as well as a Motion for Ruling and Procedural Enforcement (Doc. No. 185). The Court grants Plaintiff's Motion for Clarification (Doc. No. 178), and clarifies again that extending Defendant's deadline to respond to Plaintiff's Motion for Sanctions appropriate under Fed. R. Civ. P. 6(b)(1)(A). (*See supra* p. 19). However, the Court denies Plaintiff's Motion for Ruling and Procedural Enforcement (Doc. No. 185). Plaintiff appears to be asking the Court to rule within a certain time frame on his motions, to forgo granting future *sua sponte* extensions, and to sanction Defendant—all of which the Court declines to do. *See Dietz v. Bouldin*, 579 U.S. 40, 41 (2016) (noting a district court has broad discretion "to manage its docket and courtroom with a view toward the efficient and expedient resolution of cases."); *Pepe v. Koreny*, 189 F.3d 478 (10th Cir. 1999) ("The inherent authority of a district court to manage its docket includes discretion to grant . . . extensions of time."). (*See also supra* p. 19.)

---

[13] To the extent Plaintiff seeks "specific corrections to the record," (*see* Doc. No. 137 at 12-14), the Court finds such corrections are unnecessary beyond what the Court has already addressed in connection with the Motion to Dismiss.

**E.  Plaintiff's Motions Concerning Keymaster (Docs. No. 100; 102)**

Plaintiff also seeks sanctions and default judgment for Defendant's alleged spoilation of

evidence when it announced its intent to "rebuild[] Keymaster from scratch." (Doc. No. 100 at 2;

*see also* Doc. No. 102 at 1.) However, Defendant has confirmed that all systems have been

backed up and preservation directives have been issued. (*See* Doc. No. 129 at 2.) Moreover, the

Court issued a preservation Order on December 17, 2024, directing Defendant to preserve the

relevant Keymaster data and records.[14] (*Id.*) The Court therefore declines to sanction or enter

default judgment against Defendant for any rebuilding or anticipated rebuilding of the Keymaster

platform. Plaintiff's Second Motion for Emergency Sanctions for Spoilation of Evidence (Doc.

No. 100) and Emergency Motion for Default Judgment (Doc. No. 102) are denied.

**F.  Plaintiff's Additional Emergency Motions (Docs. No. 160; 175)**

Plaintiff filed two additional emergency motions that seek sanctions and ask the Court to

strike Defendant's Motion to Dismiss. In the first, Plaintiff argues Defendant lacks the authority

"to enforce the intellectual property rights of an unidentified third party." (Doc. No. 160.) On

that basis, Plaintiff seeks to have the Motion to Dismiss stricken. But Defendant does not seek to

enforce intellectual property rights, and the Court sees no reason to strike or otherwise sanction

Defendant.

In the second motion, Plaintiff requests that the Court deny the Motion to Dismiss and

impose sanctions because Defendant knowingly submitted false evidence. (Doc. No. 175.)

Plaintiff argues the misidentification of his username "hollywoodiownu," as

---

[14] Because Plaintiff's request for an Order "[d]irecting Defendant to immediately preserve all Keymaster-
related data," was granted during the December 17, 2024 hearing, Plaintiff's Motion for Emergency
Preservation Order and to Address Spoilation (Doc. No. 101) is moot.

"hollywoodiownyou" in Andrew Ungberg's declaration, is a "material misrepresentation" that has "prejudiced Plaintiff's ability to receive a fair adjudication." (*See generally id*.) But the discrepancy appears to be a clerical error rather than a misrepresentation, and even if it were a misrepresentation, it has no bearing on the issues presented for adjudication in the Motion to Dismiss. Thus, the Court sees no basis for sanctions in the second emergency motion, either.

## CONCLUSION

For the forgoing reasons, the Court **ORDERS** that

- Plaintiff's Motion for Sanctions Against Defendant (Doc. No. 96) be **DENIED**;

- Plaintiff's Second Motion for Emergency Sanctions for Spoilation of Evidence (Doc. No. 100) be **DENIED**;

- Plaintiff's Motion for Emergency Preservation Order and to Address Spoilation (Doc. No. 101) be **DENIED AS MOOT;**

- Plaintiff's Emergency Motion for Default Judgment (Doc. No. 102) be **DENIED**;

- Plaintiff's Supplementary Motion for Default Judgment and Sanctions (Doc. No. 107) be **DENIED**;

- Plaintiff's Objection to Minute Order on Procedural Handling of Motions (Doc. No. 109) be **DENIED**;

- Plaintiff's Motion to Exclude Electronic Evidence (Doc. No. 120) be **GRANTED IN PART**;

- Plaintiff's Objection to Courtroom Minutes (Doc. No. 137) be **DENIED**;

- Plaintiff's Emergency Motion for Rule 11 Sanctions, to Strike Defendant's Motion to Dismiss, and for Expedited Ruling (Doc. No. 160) be **DENIED**;

- Plaintiff's Emergency Motion for Sanctions Against Defendant Take-Two Interactive Software, Inc. for Knowingly Submitting False Evidence Under Penalty of Perjury (Doc. No. 175) be **DENIED**;

- Plaintiff's Motion for Clarification Regarding Court's Application of the 21-Day Rule (Doc. No. 178) be **GRANTED**;

- Plaintiff's Motion for Ruling and Procedural Enforcement (Doc. No. 185) be **DENIED**; and

- Defendant's Motion for Clarification Regarding Responses to Plaintiff's Recent Submissions (Doc. No. 201) be **GRANTED**.

Furthermore, the Court respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. No. 76) be **GRANTED** and that this case be **DISMISSED.**[15]

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

---

[15] The Court recommends dismissing this case with prejudice. Although dismissal of a *pro se* claim under Rule 12 is ordinarily denied without prejudice, *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), the Court has discretion to dismiss a *pro se* plaintiff's complaint with prejudice where "amendment would be futile[.]" *Avery v. Wade*, No. 22-4093, 2022 WL 17544077 at *1 (10th Cir. Dec. 9, 2022). Here, Plaintiff has already had several opportunities to amend his complaint, (*see* Docs. No. 26; 46), and it appears any further amendment would be futile.

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of May, 2025.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge